ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| EL PUEBLO DE PUERTO RICO<br><br>Parte Recurrida<br><br><br>v.<br><br><br><br>JOSÉ J. RIVERA ROSA<br><br>Parte Peticionaria | KLCE202301247 | *Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.:<br>E HO1999G0111<br><br>Sobre:<br>Eliminación Registro de Ofensores Sexuales<br><br>Por:<br>Tent. Art. 99 C.P. (1974) |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de diciembre de 2023.

Compareció ante este Tribunal la parte peticionaria, José Rivera Rosa (en adelante, el "señor Rivera Rosa" o el "Peticionario") mediante recurso de *Certiorari* presentado el 9 de noviembre de 2023. Nos solicitó la revocación de la *Orden* dictada por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, el "TPI") el 27 de septiembre de 2023, notificada y archivada en autos el 10 de octubre de 2023. Mediante el referido dictamen, el foro recurrido determinó que no procedía la eliminación del nombre del Peticionario del Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores (en adelante, "Registro de Ofensores Sexuales").

Por los fundamentos que expondremos a continuación, *expedimos* el auto de *Certiorari* presentado ante nuestra consideración y *confirmamos* la *Orden* recurrida.

**I.**

El señor Rivera Rosa fue sentenciado el 29 de agosto de 2000 a cumplir una pena de diez (10) años bajo el privilegio de sentencia

suspendida, por infracción al Artículo 99 del derogado Código Penal de Puerto Rico de 1974, en su modalidad de tentativa, el cual tipificaba el delito de violación. 33 LPRA sec. 4061 (derogado). Sin embargo, el 11 de mayo de 2001, el TPI revocó el mencionado privilegio y el Peticionario fue ingresado en una institución penal del país. Posteriormente, el 23 de octubre de 2006, se le concedió el privilegio de libertad bajo palabra. Finalmente, extinguió su sentencia el 3 de noviembre de 2007.

Entretanto, el 24 de octubre de 2006, se inscribió por primera vez en el Registro de Ofensores Sexuales, en cumplimiento con la Ley Núm. 266-2004, según enmendada, 4 LPRA secs. 536 *et seq.* Esta pieza legislativa imponía un término de diez (10) años de permanencia en el Registro para las personas convictas por el delito de tentativa de violación, entre otros delitos. Por lo que, bajo el estado de derecho vigente en aquel entonces, al señor Rivera Rosa le correspondía permanecer registrado hasta el 24 de octubre de 2016. **No obstante, el 14 de diciembre de 2011, luego de que el Peticionario cumpliera su sentencia, pero, anterior a que cumpliera su término en el Registro de Ofensores Sexuales, se aprobó la Ley Núm. 243-2011, *infra*, la cual a su vez enmendó la Ley Núm. 266-2004, *supra*.**

Así las cosas, el 31 de agosto de 2023, el Peticionario presentó "**Petición para Eliminación del Nombre [del] Registro de Ofensores Sexuales**". Argumentó que, a pesar de la aprobación de la Ley Núm. 243-2011, *infra*, ésta no es de aplicación a su caso, ya que cuando se aprobó dicha enmienda, el Peticionario ya había extinguido su sentencia. Así pues, solicitó se eliminara su nombre del Registro de Ofensores Sexuales por haber cumplido con el término de diez (10) años que inicialmente establecía la Ley Núm. 266-2004, *supra*.

En respuesta, el 11 de septiembre de 2023, el Pueblo de Puerto Rico (en adelante, el "Ministerio Público") radicó "**Moci[ó]n Sobre Petici[ó]n de Orden sobre Inscripción en el Registro de Ofensores Sexuales**". Alegó que, según lo resuelto por el Tribunal Supremo de Puerto Rico, la Ley Núm. 243-2011, *infra*, era de aplicación retroactiva por lo que, lo correspondiente

es que el señor Rivera Rosa permanezca inscrito en el Registro de Ofensores Sexuales de por vida.

Analizadas las dos posiciones, el 27 de septiembre de 2023, notificada y archivada el 10 de octubre de 2023, el TPI emitió *Orden* en la cual declaró No Ha Lugar la petición presentada por el señor Rivera Rosa.

Inconforme con tal determinación, el 9 de noviembre de 2023, el Peticionario acudió ante este Tribunal mediante el recurso de *Certiorari* que nos ocupa y le imputó al foro primario haber cometido los siguientes errores:

**1. Erró el TPI al denegar la petición de eliminación de datos del señor Rivera Rosa del Registro de Ofensores Sexuales, a pesar de haber calculado el término de los diez años requeridos por la Ley 28-1997, según enmendada por la Ley 266-2004, que era el estado derecho vigente al momento de dictarse su sentencia y al momento de extinguirla.**

**2. Erró el TPI al interpretar que era de aplicación retroactiva al caso de autos el deber de inscribirse de por vida, introducido al Registro por la Ley 243-2011, a pesar de que cuando fue promulgada el señor Rivera Rosa había cumplido previamente su sentencia.**

El 27 de noviembre de 2023, el Gobierno de Puerto Rico, por conducto de la Oficina del Procurador General, presentó su alegato en oposición.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. Pueblo v. Díaz de León, 176 DPR 913, 917 (2009). Al ser un recurso extraordinario de carácter discrecional, este solo se expedirá luego de justipreciar los criterios establecidos en la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 40. Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la precitada disposición reglamentaria dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Íd.

Las delimitaciones que imponen estas disposiciones reglamentarias tienen como objetivo intrínseco prevenir la "dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación". Mun. Aut. De Caguas v. JRO Construction, Inc. *et al.,* 201 DPR 703, 712 (2019). Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debe ser utilizado con cautela y por razones de peso. Pueblo v. Díaz de León, *supra*, pág. 918.

En ese sentido, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. García v. Padró, 165 DPR 324, 334 (2005). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. S.L.G. Flores, Jiménez v. Colberg, 173 DPR 843 (2008).

**B.**

La Ley Núm. 28, aprobada el 1 de julio de 1997 (en adelante, "Ley Núm. 28"), fue promulgada con el propósito de crear el Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso contra Menores, toda vez que se reconoció el deber del Estado de proteger a la ciudadanía y a las víctimas de delito, en consideración a la peligrosa reincidencia en la sociedad de delitos sexuales o abuso contra menores. *Véase*, Exposición de Motivos de la Ley Núm. 28 de 1997. Fue por ello que se entendió necesario crear el Registro del 1997, mediante el cual se crearía un sistema en el que se ordenaría la inscripción de personas convictas por delitos sexuales y de abuso contra menores. De esta forma, se brindaría acceso a esta información, tanto a las agencias encargadas de mantener el orden público como a la comunidad en general, procurando así mayor seguridad pública.

Según la citada Ley, en el Registro del 1997 serían inscritas las personas convictas por los siguientes delitos o su tentativa:

> [V]iolación, seducción, sodomía, actos lascivos o impúdicos; proxenetismo, rufianismo o comercio de personas cuando la víctima fuere menor de dieciocho (18) años y el delito agravado; delito contra la protección a menores, incesto, restricción de libertad cuando la víctima fuere menor de dieciséis (16) años y no fuere su hijo, secuestro cuando la víctima fuere menor de dieciocho (18) años y no fuere su hijo, robo de menores, perversión de menores cuando se admitiere o retuviere a un menor de dieciocho (18) años en una casa de prostitución o sodomía; maltrato agravado de un menor y agresión sexual conyugal, comprendidos en los Artículos 99, 101, 103, 105, 110(a) y (c) y 111, 115, 122, 131(e), 137 A(a), 160 y 163(e) de la Ley Núm. 115 de 22 de julio de 1974, según enmendada, y en los Artículos 3.2(g) y 3.5 de la Ley Núm. 54 de 15 de agosto de 1989, respectivamente; y el delito de maltrato a menores establecido en los Artículos 37 y 38 de la Ley 75 de 28 de mayo de 1980, según enmendada. Art. 3 (a) de la Ley Núm. 28, *supra,* 4 LPRA sec. 535 (derogada).

Se dispuso, además, que debían registrarse aquellas personas que al momento de la aprobación de la Ley Núm. 28 se encontraban "recluidas por la comisión de alguno de los delitos enumerados en este Artículo y aquellas personas a las que se le[s] revoque su libertad por el incumplimiento de alguna condición". Íd.

Dicha Ley establecía, en su Artículo 5, que las personas convictas por los delitos indicados en el estatuto se mantendrían en el Registro por un período de diez (10) años desde que la persona cumplió su sentencia, desde que comenzó a cumplir la sentencia bajo el beneficio de libertad a prueba o desde que es liberada bajo palabra. Igualmente, el estatuto disponía que, una vez transcurrido este término, los datos del convicto serían eliminados. Íd.

Ahora bien, dicha pieza legislativa fue derogada por la Ley Núm. 266-2004, según enmendada, conocida como la "Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores", 4 LPRA sec. 536 *et seq.* (en adelante, "Ley Núm. 266"), la cual creó el Registro. Conforme a la Ley Núm. 266, quedarían registradas:

> Las personas que hayan sido o sean convictas por delitos similares, o sus tentativas o conspiraciones, a los enumerados en el Artículo 2 de esta Ley por un tribunal federal, estatal, de tribus indígenas reconocidas por el gobierno federal, extranjero o militar, y se les haya garantizado el debido proceso de ley en el país que fueron convictos, que se trasladen a Puerto Rico para establecer su residencia, o que por razón de trabajo o estudio se encuentren en Puerto Rico, aunque su intención no sea la de establecer domicilio en el País. 4 LPRA sec. 536a(c).

Cabe destacar que de la Exposición de Motivos de la Ley Núm. 266, *supra*, claramente se desprende que el propósito de la política pública establecida mediante este estatuto no tenía un propósito punitivo, sino el de garantizar la seguridad, protección y bienestar general de la población más vulnerable de la sociedad. Posteriormente, mediante la aprobación de la Ley Núm. 243-2011 (en adelante, "Ley Núm. 243-2011"), la Ley Núm. 266 se enmendó para atemperar la ley local a la ley federal "Adam Walsh Child Protection and Safety Act of 2006", también conocida como el "Sex Offender Registration and Notification Act" (SORNA, por sus siglas en inglés). En la Exposición de Motivos de tal enmienda, se reiteró que el propósito del Registro no es uno punitivo, sino el garantizar la seguridad de la ciudadanía.

Mediante las enmiendas introducidas por la Ley Núm. 243-2011, *supra*, la cual entró en vigor el 14 de diciembre de 2011, se incluyó en la Ley Núm. 266, *supra*, una clasificación de ofensores sexuales en tres (3) categorías: Ofensor Sexual Tipo I, Tipo II y Tipo III. En lo que nos concierne,

el Artículo 2 de la Ley Núm. 266 establece que un Ofensor Sexual Tipo III

se define como una persona que ha cometido los siguientes delitos, o su

tentativa:

> (a) **Violación**; seducción; sodomía; actos lascivos cuando la víctima no ha cumplido los dieciséis (16) años; incesto; secuestro cuando la víctima fuere menor de dieciocho (18) años y no fuere su hijo, robo de menores comprendidos en los **Artículos 99,** 101, 103, 105, 122, 137-A(a) y 160, respectivamente, de la Ley Núm. 115 de 22 de julio de 1974, según enmendada; y agresión sexual conyugal, según tipificada en la sec. 635 del Título 8.
>
> (b) Agresión Sexual, según comprendido en los incisos (a), (b), (c), (d), (e) o (g) de la sec. 4770 del Título 33.
>
> (c) Actos lascivos, cuando la víctima no ha cumplido los trece (13) años de edad; secuestro de menores; secuestro agravado cuando la víctima fuere menor de dieciocho (18) años, según comprendidos en las secs. 4762, 4772 y 4798(a) del Título 33.
>
> (d) Un Ofensor Sexual Tipo II convicto anteriormente de un delito sexual y que posteriormente comete otro delito sexual.
>
> (e) Cualquier delito antecedente o sucesor de los mencionados en las cláusulas (a), (b) y (c) de este inciso. 4 LPRA sec. 536 (énfasis suplido).

En consonancia con lo anterior, el Artículo 5 de la Ley Núm. 266

dispone que los Ofensores Sexuales Tipo III estén registrados de por vida.

4 LPRA sec. 536c. Como puede observarse, las enmiendas introducidas por

la Ley Núm. 243-2011, *supra*, incorporaron requisitos más rigurosos para

los ofensores sexuales sujetos al Registro, a la misma vez que se mantuvo

el carácter no punitivo del mismo.

Relativo a las controversias que nos ocupan el Artículo 15 de la Ley

Núm. 243-2011 dispuso que la misma tendría vigencia inmediata después

de su aprobación, excepto los incisos (f) y (g) del Artículo 4, los cuales

tendrían efecto prospectivo. Ahora bien, dicho Artículo establece que "[l]as

demás disposiciones podrán tener efecto retroactivo". *Véase*, Pueblo v.

Ferrer Maldonado, 201 DPR 974 (2019). A esos efectos, el Tribunal

Supremo expresó lo siguiente:

> [L]a aplicación retroactiva de las enmiendas introducidas por la Ley Núm. 243-2011 a la Ley Núm. 266-2004 *no violan* la prohibición constitucional en contra de la aplicación de leyes *ex post facto.* Esta ley, y sus más recientes enmiendas, es de carácter civil, no penal ni punitiva, y cumple cabalmente con la metodología adjudicativa adoptada en *Smith v. Doe.* En aras de evitar cualquier posible ejercicio de arbitrariedad, y para promover la uniformidad en las decisiones de los

tribunales en Puerto Rico, luego de una reflexión ponderada sostenemos que: todas las disposiciones contenidas en las enmiendas introducidas por la Ley Núm. 243-2011 aplican de forma retroactiva, independientemente de si la persona que impugna su anotación en el Registro arguye que, en su situación particular, corresponde emplear el principio de favorabilidad. Íd., pág. 999.

**III.**

Por estar intrínsecamente relacionados entre sí, discutiremos los errores señalados en conjunto.

En el caso de autos, el señor Rivera Rosa trae ante nuestra consideración dos (2) planteamientos de error que cuestionan la determinación del TPI en cuanto a la aplicación retroactiva de la Ley Núm. 243-2011, *supra*. Como parte de los argumentos, expresó que la aprobación de la Ley Núm. 243-2011, *supra*, ocurrió luego de que éste extinguiera su **<u>sentencia</u>**. Por lo que, según su teoría, lo correspondiente sería que se eliminara su nombre del Registro de Ofensores Sexuales. Destacó que, en el caso <u>Pueblo v. Ferrer Maldonado</u>, *supra*, el peticionario aún se encontraba cumpliendo su sentencia, por lo que el caso de autos era distinguible de la controversia a la cual se enfrentó el Tribunal Supremo en dicha ocasión. No le asiste la razón.

Si bien es cierto que, en <u>Pueblo v. Ferrer Maldonado</u>, *supra*, el Sr. Efraín Ferrer Maldonado aún se encontraba cumpliendo su sentencia, el Tribunal Supremo no condicionó la aplicación retroactiva de la Ley al cumplimiento de la condena del peticionario. De hecho, se estableció que la aplicación retroactiva de las enmiendas introducidas por la Ley Núm. 243-2011, *supra*, no violan la prohibición constitucional en contra de la aplicación de leyes *ex post facto*. De hecho, el Tribunal Supremo fue más allá al expresar taxativamente lo siguiente: "las enmiendas introducidas por la Ley Núm. 243-2011 aplican de forma retroactiva, **independientemente de si la persona que impugna su anotación en el Registro arguye que, en su situación particular, corresponde emplear el principio de favorabilidad**". <u>Íd</u>., pág. 999 (énfasis suplido). Esto debido a que la misma es de carácter civil, no penal ni punitivo. Además, el alto foro judicial local dejó claro que, **con el fin de uniformar las decisiones realizadas por los**

**tribunales en Puerto Rico, todas las disposiciones contenidas en las enmiendas introducidas por la Ley Núm. 243-2011**, *supra,* **aplican de forma retroactiva para evitar la aplicación arbitraria de ésta**. Íd. Adicionalmente, encontramos expresiones del Tribunal Supremo en Pueblo v. Ferrer Maldonado, *supra*, que son indicativas de que se tomó en consideración el momento en que se presente la petición de eliminación del Registro. Específicamente, dicho foro expresó lo siguiente:

> A la luz de todo esto, el señor Ferrer Maldonado, quien quedó registrado según los parámetros de la Ley Núm. 28-1997 **pero cuya moción ante el foro primario para que sus datos e información personal fuesen eliminados del Registro ocurrió luego de la aprobación de las enmiendas introducidas por la Ley Núm. 243-2011**, nos lleva a concluir que estas le aplican retroactivamente. Íd., pág. 989 (énfasis suplido).

Por otro lado, nos resultan persuasivas las expresiones del Tribunal Supremo en Placer Román v. ELA y otros, 193 DPR 821 (2015) (Sentencia), las cuales igualmente fueron citadas por dicho foro para determinar que las disposiciones de la Ley Núm. 243-2011 aplican retroactivamente. Allí, la opinión de conformidad suscrita por la entonces Jueza Presidenta, Hon. Liana Fiol Matta, y las opiniones concurrentes de los Jueces Asociados, Hon. Rafael Martínez Torres y Hon. Luis F. Estrella Martínez, sostuvieron que, en ese caso, no era de aplicación retroactiva la Ley Núm. 243-2011, *supra*, debido a que, entre otras cosas, en el momento en el que entró en vigor el mencionado estatuto, ya el señor Placer Román había cumplido el término de diez (10) años de registrado. *Véase*, Íd., págs. 838, 840 y 860-861. Por tanto, distinto al caso que nos ocupa, allí **se cumplió con el término de inscripción en el Registro de Ofensores Sexuales** antes **de las enmiendas incorporadas a la Ley Núm. 266-2004 por medio de la Ley Núm. 243-2011**, *supra*. Coincidimos con dicha apreciación.

No podemos perder de perspectiva que la Ley Núm. 243-2011, *supra*, tiene como propósito divulgar cierta información al público y, a su vez, promover la seguridad de la ciudadanía. Siendo así, el interés del estado es garantizar la protección de los sectores más vulnerables ante la posibilidad de reinserción en la sociedad de las personas convictas por dichos delitos. Entiéndase, al examinar la interacción de los estatutos aplicables a las

controversias que nos ocupan, en conjunto con la jurisprudencia interpretativa sobre el tema, somos de la opinión de que en este tipo de asuntos el cumplimiento de la condena impuesta no es un elemento esencial, sino el momento en que vencía el plazo de inscripción en el Registro y cuándo se solicita la remoción del mismo.

No existe controversia sobre la fecha de inscripción del Peticionario en el Registro de Ofensores Sexuales y, por tanto, tampoco debe existir contención alguna sobre cuándo se expiraba el plazo que éste debía permanecer, conforme la Ley Núm. 266-2004, *supra*. En el presente caso, el señor Rivera Rosa extinguió su pena de reclusión el 3 de noviembre de 2007 y se inscribió por, primera vez, en el Registro de Ofensores Sexuales el 24 de octubre de 2006, según lo establecido por la Ley Núm. 266-2004. Cónsono con lo anterior, se suponía que el Peticionario cumpliera con su permanencia en el Registro el 24 de octubre de 2016. Sin embargo, aprobada la Ley Núm. 243-2011, *supra*, y estando aún vigente el plazo del Peticionario en el Registro, se enmendó el término correspondiente al delito por el cual el señor Rivera Rosa fue hallado culpable, por lo que la nueva normativa establece que la inscripción de éste en el Registro de Ofensores Sexuales es de por vida, al considerársele un Ofensor Sexual Tipo III por haber sido hallado culpable por tentativa de violación.

Adviértase que, si bien es cierto que al momento de la aprobación de la Ley Núm. 243-2011, *supra*, el Peticionario ya había cumplido su sentencia, no es menos cierto que para ese entonces aún no se había extinguido el término de su inscripción en el Registro de Ofensores Sexuales y solicitó su eliminación del Registro ya estando vigente sus disposiciones. Según adelantamos en el acápite I de la presente *Sentencia*, dicho plazo vencía en el 2016. Por tanto, al entrar en vigor la Ley 243-2011, *supra*, antes de que el Peticionario cumpliera con el término de diez (10) años inicialmente impuesto y quedando establecido que su aplicación es retroactiva, lo correcto es que el señor Rivera Rosa permanezca inscrito en el Registro de Ofensores Sexuales de por vida, en cumplimiento con el ordenamiento jurídico vigente.

**IV.**

Por los fundamentos antes expuestos, los cuales hacemos formar parte integral del presente dictamen, *expedimos* el auto de *Certiorari* presentado ante nuestra consideración y *confirmamos* la *Orden* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones